VIOLET KREPCIK, ADMINISTRATRIX OF THE ESTATE OF CALVIN L. KREPCIK, DECEASED, APPELLANT, V. INTERSTATE TRANSIT LINES, A CORPORATION, APPELLEE.
40 N. W. 2d 252

Filed December 12, 1949. No. 32594.

*Beatty, Clarke, Murphy & Morgan,* and *William S. Padley,* for. appellant.

*T. F. Hamer, C. B. Matthai, G. C. Holdrege, R. B. Hamer,* and *James G. McIntosh,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Violet Krepcik, administratrix of the estate of Calvin L. Krepcik, deceased, plaintiff and appellant, against Interstate Transit Lines, a corporation, defendant and appellee, for the alleged death of the decedent, Calvin L. Krepcik.

The action was tried to a jury and a verdict was returned in favor of the plaintiff for $34,050.74. Within the time provided by law for such purposes a motion entitled "MOTION FOR JUDGMENT, AND IN THE ALTERNATIVE FOR A NEW TRIAL" was filed by the defendant.

The first paragraph of the motion is a motion for judgment in favor of defendant notwithstanding the verdict and is predicated on a motion made by defendant for a directed verdict in its favor at the close of all of the evidence. The grounds of the motion for directed verdict and of the motion for judgment notwithstanding the verdict are (1) that the evidence is insufficient to justify the submission of negligence of the defendant to a jury as a proximate cause of the accident in question and the resulting injury and death of the decedent, (2) that the evidence establishes as a matter of law that the sole and proximate cause of the accident and resulting injury and death of decedent was the negligence of the decedent, and (3) that the evidence establishes as a matter of law that the decedent was guilty of more than slight negligence which was the proximate cause of the accident and his resulting injury and death.

The second paragraph of the motion introduced that portion which requested the court to grant a new trial. The request for a new trial was by its terms conditioned upon the failure of the court to render judgment notwithstanding the verdict. The motion for new trial contains 36 assignments of error. All of them except one are different from the grounds of the motion for judgment notwithstanding the verdict. No necessity arises for setting forth the grounds of these assignments here.

The district court sustained the motion for judgment notwithstanding the verdict, set aside the verdict, and rendered judgment in favor of the defendant. As a part of the journal entry the court declared a lack of necessity for a ruling on the motion for new trial and expressly reserved ruling thereon.

From the judgment entered notwithstanding the verdict the plaintiff has appealed.

The assignments of error recited in plaintiff's brief are numerous but they all relate to one subject in the light of a concession made by defendant in its brief. They relate to the question of whether or not plaintiff's decedent was guilty of negligence or contributory negligence which as a matter of law defeats a right of recovery. The concession made by defendant is that were it not for evidence of negligence or contributory negligence on the part of plaintiff's decedent sufficient as a matter of law to defeat a recovery the evidence of negligence on the part of defendant would have been sufficient to submit to a jury.

It becomes necessary therefore to determine from the evidence whether or not it may be said that plaintiff's decedent was guilty of such negligence that it may be said as a matter of law that plaintiff may not recover.

Under the comparative negligence statute where action is brought to recover damages for personal injuries or for injuries to property caused by the negligence of another the plaintiff may, if he was guilty of negligence, recover only if his negligence was slight in comparison with that of the defendant which was gross. Section 25-1151, R. R. S. 1943; Lieb v. Omaha & C. B. St. Ry. Co., 119 Neb. 222, 228 N. W. 364; Tempel v. Proffitt, 122 Neb. 249, 240 N. W. 285; Blanchard v. Lawson, 148 Neb. 299, 27 N. W. 2d 217.

Ordinarily the question of the existence of negligence or contributory negligence is one for the jury. Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412.

Where different minds may reasonably draw different conclusions from evidence the question presented is one of fact for the jury. Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624; Meyer v. Platte Valley Construction Co., *supra;* Dickman v. Hackney, 149 Neb. 367, 31 N. W. 2d 232.

Likewise ordinarily in a case where on the one hand

negligence is charged and on the other contributory negligence, the question of comparison is for the jury. Casey v. Ford Motor Co., 108 Neb. 352, 187 N. W. 922; Day v. Metropolitan Utilities District, 115 Neb. 711, 214 N. W. 647; Tempel v. Proffitt, *supra;* Zimmer v. Brandon, 134 Neb. 311, 278 N. W. 502; Blanchard v. Lawson, *supra.*

Where however the evidence shows beyond reasonable dispute that a plaintiff's negligence was more than slight as compared with a defendant's negligence it is the duty of the court to determine the question as a matter of law and direct a verdict in favor of the defendant. McDonald v. Omaha & C. B. St. Ry. Co., 128 Neb. 17, 257 N. W. 489; Doan v. Hoppe, 132 Neb. 641, 272 N. W. 763; Whittaker v. Hanifin, 138 Neb. 18, 291 N. W. 723; Dickenson v. County of Cheyenne, 146 Neb. 36, 18 N. W. 2d 559; Meyer v. Platte Valley Construction Co., *supra.* Doan v. Hoppe, *supra,* was reversed on rehearing but this principle was not disturbed.

In a case where a motion has been made at the close of all of the evidence for a directed verdict, which motion should have been sustained but was overruled and the case was submitted to a jury which returned a verdict contrary to the motion and a motion for judgment notwithstanding the verdict is duly filed, it is the duty of the court to sustain the motion and render judgment in accordance with the motion for a directed verdict. Section 25-1315.02, R. R. S. 1943; In re Estate of Farr, 150 Neb. 67, 33 N. W. 2d 454; Patrick v. Union Central Life Ins. Co., 150 Neb. 201, 33 N. W. 2d 537; Sohler v. Christensen, 151 Neb. 843, 39 N. W. 2d 837. In re Estate of Farr, *supra,* was reversed on rehearing but this principle was not disturbed.

For the purpose of determining whether or not the court erred in refusing to sustain a motion for a directed verdict the motion must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom it was made, and in considering it the party against whom it is made is

entitled to have every controverted fact resolved in his favor and to have the benefit of every reasonable inference which may be drawn from the evidence resolved in his favor. Parks v. Metz, 140 Neb. 235, 299 N. W. 643; Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175; Meyer v. Hartford Bros. Gravel Co., 144 Neb. 808, 14 N. W. 2d 660; Spaulding v. Howard, 148 Neb. 496, 27 N. W. 2d 832.

Where on an issue of fact the evidence is conflicting it is error for the court to direct a verdict or to render judgment notwithstanding the verdict with such conflicting evidence as a basis. Spaulding v. Howard, *supra*.

Whether or not the court erred in sustaining the motion for judgment notwithstanding the verdict and in rendering judgment accordingly must be ascertained in the light of these principles.

The accident out of which this action grew happened on September 9, 1947, in the intersection of U. S. Highway No. 30 and Main Street in Shelton, Buffalo County, Nebraska. U. S. Highway No. 30 is a main generally east and west thoroughfare extending throughout the length of the state. It intersects Main Street which extends north and south. At the intersection the highway is slightly off the direct east and west line. It extends slightly from southwest to northeast. The intersection is in the business section of Shelton. The highway is protected at the intersection by stop signs or buttons at the points where Main Street enters it from the north and from the south. On the day of the accident there was no speed limit sign to the west of the intersection within or in close proximity to Shelton. Approximately 1,200 feet west however there was a "Slow" sign. The width of the intersection north and south within curb lines is about 47 feet. The width east and west between curbs is 59 feet. The intersection and the highway both east and west for a block in each direction is paved with brick. In both directions where the brick ends concrete paving begins. The concrete paving is about 27 feet narrower than the brick. Where the concrete joins the brick the north line

thereof is about 17 feet south of the north line of the brick and the south line of the concrete is about 10 feet north of the south line of the brick. On the north side of the highway and immediately west of the intersection stalls were marked off for parallel parking of automobiles. There is no evidence that stalls were marked off on the south side but automobiles customarily parked on both sides.

On September 9, 1947, Donald E. Quinn was the operator in charge of a large Greyhound bus belonging to the defendant which was being operated westward on U. S. Highway No. 30. Near 6:30 p. m. he drove off the highway east of Main Street in Shelton and following a regular route arrived at and turned south into Main Street. He stopped long enough to discharge a passenger at the bus station which was about a half block north of the intersection. He then proceeded south into the intersection. Plaintiff's decedent came from the west into the intersection in charge of a truck, referred to as a tractor and semitrailer, loaded with cattle. There the two vehicles collided at about 6:30 p. m. The contact as disclosed by the testimony of witnesses and by photographs was between points at and adjacent to the right front of the bus and the left front of the truck. No more accurate statement as to the point or points of contact appears possible.

In consequence of the collision the course of the truck was deflected to the southeast where after traveling some distance it struck and damaged a brick-veneer building. The truck was also severely damaged. The direction of the bus was deflected by the contact and turned by the driver to the east and northeast and finally came to rest about a half block east of the intersection. It was likewise badly damaged. Plaintiff's decedent was injured and died as a result of the collision.

The plaintiff charged that the collision was caused by negligence on the part of defendant's driver. This charge is not conceded by the defendant but it does concede in

its brief as has been pointed out that the evidence adduced was sufficient for submission of its negligence to a jury in the absence of a defense of contributory negligence and evidence in support of it sufficient to require the court to find as a matter of law that it had been sustained. There is however a defense of contributory negligence and the defendant contends that the evidence in support of it is sufficient to sustain it as a matter of law.

By answer which refers to a counterclaim for its specification the defendant charged that plaintiff's decedent was negligent in the following particulars: (1) In driving his truck at a rate of speed in excess of that which was reasonable and prudent under the conditions existing and in excess of 20 miles an hour within a business district; (2) in failing to drive on the right hand or south half of the traveled portion of the highway which was passable and in good condition; (3) in failing to yield and accord to the bus the right to use the north traffic lane or north half of the traveled portion of the highway; (4) in failing to keep and maintain a reasonable and proper lookout for vehicles entering the intersection; (5) in failing to turn his vehicle slightly to the right or south so as to have avoided the collision; (6) in failing to stop so as to avoid the collision; and (7) in overloading his truck.

On the question of speed of decedent's truck, while the evidence in this respect is subject to a reasonable inference that it was traveling at a high and dangerous rate of speed and also to an inference that speed contributed to the happening of the accident we do not think that it shows beyond reasonable dispute that this was true. No witness with anything approaching positiveness had testified to the speed of the truck at the point of collision. The driver of the bus said he could not judge the speed. He said: "Looked like he was coming very fast."

Harold S. Conroy was on the north side of the highway probably nearly a half block west of the intersection looking west and saw the truck 80 or 90 feet west of him.

He watched the truck until it came almost up to him but not after it passed. He gave it as his opinion at that time that the truck was going between 40 and 45 miles an hour.

John Mason, a passenger on the bus, said he looked up just before the collision and saw the truck. He said it was going very fast.

On the part of plaintiff no witness testified directly to the speed at which the decedent was traveling. Plaintiff did adduce evidence approximating the entire time it took decedent to travel the last six miles coming into Shelton. The average rate of speed computed on the basis of this approximation would have been about 21 miles an hour.

To be considered with this evidence is the evidence of what occurred as a result of the collision and the inferences to be drawn therefrom. Without describing the results with particularity it is reasonably inferable that the two vehicles came together with great force and violence. No definite or even reasonably definite conclusion may be drawn therefrom as to the speed at which the decedent was traveling at the time of the collision.

Assuming that the decedent was traveling at a high and prohibited speed under law we think that it may not be said beyond reasonable dispute under the evidence that this was a cause or contributory cause of the collision.

It may be reasonably concluded that the collision occurred south of the geographical center of the intersection which was also the south half and the decedent's right-hand side of the highway. Attention has already been called to evidence relating to the speed of decedent. The driver of defendant's bus came from the north or decedent's left. There is evidence that the bus did and that it did not stop before entering the intersection. There is evidence that the bus entered at a rate of speed varying from 4 to 20 miles an hour. The driver did not see the truck until immediately before the collision and after he was well out into the intersection. He testified that he

could not see earlier because of parked cars on the north side of the highway. In this he was obviously in error since in his position as driver of the bus his line of vision was well above the tops of ordinary automobiles. It may be reasonably concluded from the evidence that he did not seek to turn in such manner as to keep the bus in the north lane or north half of the highway which was his right-hand side. He testified that he started to turn right but on seeing the truck he suddenly turned left and immediately the collision occurred. From this and the other evidence relating to the condition of the vehicles and marks observed on the paving it could be reasonably concluded that the bus was driven so far into the intersection that to have turned west it would have been necessary for it to have gone a considerable distance into the south half of the highway and into the path of east-bound traffic.

We conclude therefore on this proposition that the question of negligence, if any, of the defendant and the contributory negligence, if any, of plaintiff's decedent and the comparison of the two, if shown to exist, were for determination by a jury.

Based upon the evidence which has been adverted to in a discussion of the first of the charges of contributory negligence as they have been numbered herein and for like reasons we conclude that the fourth, fifth, and sixth propositions presented questions for determination by a jury.

The second and third may be considered together. They deal with alleged failure on the part of decedent to yield the use of the north half of the traveled portion of the highway.

It may reasonably be concluded from the evidence that the decedent never crossed to the north of the geographical center of the highway. The highway was paved from curb to curb. The defendant contends substantially that because of usage and condition the center of the traveled portion was to the south of the geographical center and

that the decedent was driving to the north of this center and should and could have turned south slightly and thus have avoided the collision.

The evidence in this connection does not without reasonable dispute sustain the contention of the defendant. A question for consideration and determination by a jury was presented.

The seventh and last specification of contributory negligence is substantially that the accident was due to the fact that the truck was overloaded.

There is some evidence that the truck was carrying a load in excess of its licensed capacity and that the weight of the load and its character has an effect upon the operation of a truck. There is none however from which a conclusive inference may be drawn that this load more than slightly affected operation by the decedent.

We conclude therefore that the motion for judgment notwithstanding the verdict was improperly sustained.

The question now arises as to whether or not on reversal the direction shall be to reinstate the verdict and judgment, as a finality or whether after reinstatement of the verdict and judgment there shall be required a determination upon the motion for a new trial. The defendant contends in this event that the case must go back for ruling on the motion for new trial. The plaintiff makes the opposite contention.

The first contention of plaintiff in this respect is that the so-called alternative motion, though it requested a new trial only in the event the motion for judgment notwithstanding the verdict was denied, must be considered as but one motion and that the ruling on the motion for judgment notwithstanding the verdict and subsequent appeal therefrom brings the entire motion here for review. This contention we conclude is without merit.

This question has not been previously before this court but it has been before the United States Supreme Court at least once and the United States Circuit Court of Appeals on several occasions. In those courts in all cases

except one it is made clear that unless the two have an identical basis they must be considered as separate motions and that the ruling on the motion for judgment notwithstanding the verdict leaves undetermined and for later determination the motion for new trial. The decisions were made in interpretation of Rule 50 (b) of the Federal Rules of Procedure. This rule is identical with our section 25-1315.02, R. R. S. 1943, as follows: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

The cases are: Montgomery Ward & Co. v. Duncan, 311 U. S. 243, 61 S. Ct. 189, 85 L. Ed. 147; Pruitt v. Hardware Dealers Mut. Fire Ins. Co., 112 F. 2d 140; Pessagno v. Euclid Inv. Co., 112 F. 2d 577; Vearn v. Crane, 114 F. 2d 896; General American Life Ins. Co. v. Central Nat. Bank, 136 F. 2d 821; Binder v. Commercial Travelers Mut. Acc. Assn., 165 F. 2d 896; Marsh v. Illinois C. R. R. Co., 175 F. 2d 498.

The exception is Duncan v. Montgomery Ward & Co.,

108 F. 2d 848, and this case in this respect was overruled in Montgomery Ward & Co. v. Duncan, *supra.*

All of these cases make clear the further proposition that the two motions, except where they have a single basis which, as previously pointed out, is not true in this case, are basically different and of necessity a ruling on the motion for judgment notwithstanding the verdict leaves for later action by the trial court the motion for new trial. Referring to Rule 50 (b), *supra,* the court in Montgomery Ward & Co. v. Duncan, *supra,* said: "Each motion, as the rule recognizes, has its own office. The motion for judgment cannot be granted unless, as matter of law, the opponent of the movant failed to make a case and, therefore, a verdict in movant's favor should have been directed. The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury."

In Pessagno v. Euclid Inv. Co., *supra,* it was said: "A motion for directed verdict raises only the question whether reasonable men might differ on the question of negligence. * * * A motion for a new trial, however, may raise a myriad of other questions as to which appellant has the right to a ruling."

In Marsh v. Illinois C. R. R. Co., *supra,* it was said: "A motion for a directed verdict, or for a judgment notwithstanding the verdict under Rule of Civil Procedure 50, 28 U. S. C. A., raises a question of law only: * * *. The motion for a new trial is entirely independent of the other two motions and is governed by different principles, and has a different result." In the same case it is said: "Rule of Civil Procedure 50, while altering the procedure in federal courts, did not alter the nature and effect of these motions, and each is entitled to be decided

according to the principles applicable to it without confusing them."

In Montgomery Ward & Co. v. Duncan, *supra,* in reference to cases such as this one where the motion for judgment notwithstanding the verdict has been sustained but has been reversed on appeal, the court said: "In the circumstances here disclosed the uniform practice in the state appellate courts has been to remand the case to the trial court with leave to pass upon the motion for new trial." This practice has been approved or followed in all of the cases cited herein from the United States Supreme Court and the United States Circuit Court of Appeals.

This is true in Montgomery Ward & Co. v. Duncan, *supra,* even though in the opinion in that case a plan was advanced or proposed whereby ruling on the two motions at separate times could be avoided and consideration of the rulings on the two could be had on a single appeal.

The proposal as we interpret it is, as applied to cases such as this where the motion for judgment notwithstanding the verdict is to be sustained by the trial court, that the motion for judgment notwithstanding the verdict should first be ruled upon and that then the motion for new trial should be considered and a tentative ruling made upon the motion for new trial which would amount to a determination thereon in case of reversal of the judgment notwithstanding the verdict on appeal. All matters would thus be presented to the appellate court in a single proceeding.

What was advanced or proposed there appears not to have been considered a rule of practice. It was made in 1940. It appears not to have been followed in the later cases cited herein from the Circuit Court of Appeals, and it does not appear that in any of these cases a party was denied the right to have his motion for new trial heard by the trial court after consideration of the motion for judgment notwithstanding the verdict by the Circuit Court of Appeals. The opposite appears to have been true.

We conclude that on remand the defendant has the

54

right to have its motion for new trial ruled upon by the district court.

The judgment notwithstanding the verdict is reversed and the cause remanded with directions to reinstate the verdict of the jury and judgment thereon and with the further direction that the motion of the defendant for a new trial be considered and a determination made thereon.

REVERSED AND REMANDED WITH DIRECTIONS.